IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARY B. TOPPINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:08-cv-04269-NKL |
| | ) |
| THE HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Plaintiff Mary B. Toppins ("Toppins") asserts that Defendant the Hartford Life and Accident Insurance Company ("Hartford") wrongfully denied her claim for benefits under her employer's long term disability plan in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Pending before the Court are cross-motions for summary judgment [Docs. ## 21 and 23]. The Court grants, in part, summary judgment in favor of Toppins. Hartford's motion for summary judgment is denied.

**I.    Factual background**

As an employee for LaPorte, Inc., Toppins worked as a Quality Assurance Lab Technician and was eligible for benefits under a Group Insurance Policy issued by Hartford and effective March 1, 1999. The Hartford policy was part of her employer's ERISA benefit plan. The plan provides benefits to employees if they become disabled. Under the policy, a person is "disabled" if "during the Elimination Period and for the next 24 months you are prevented by . . . sickness . . . from performing one or more of the Essential Duties of your Occupation, and

1

as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings." (Exhibit Attachment ("EA") at A37). An "Essential Duty" is a duty that "1. is substantial, not incidental; 2. is fundamental or inherent to the occupation; and 3. can not be reasonably omitted or changed." *Id.* After the Elimination Period and the next 24 months, a person is only disabled if "prevented from performing one or more of the Essential Duties of Any Occupation." *Id.* The policy further provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the policy. (EA at A35).

Toppins first submitted a disability claim under the policy on June 21, 2000, due to pain in her legs and back. By letter dated August 16, 2000, Hartford approved Toppins' disability application and began paying her long-term disability benefits under the policy from August 6, 2000. On September 1, 2001, the Social Security Administration found that Toppins also was disabled under the Social Security Disability Insurance rules. On March 25, 2002, Hartford found that Toppins satisfied the policy's "Any Occupation" definition of disability and continued paying her benefits. After this date, Hartford would periodically update its records and review Toppins' condition.

On March 22, 2006, one of Toppins' treating physicians, Dr. Swink, filled out a Hartford "Physical Capabilities Evaluation Form" and an "Attending Physician's Statement of Continued Disability." (EA at B367-69). In November 2006, Hartford sent a letter to Dr. Swink, seeking to "clarify Ms. Toppins' current level of functionality." (EA at B109). Dr. Swink returned the letter, marking a line in which he agreed with the stated restrictions in Hartford's letter.

On January 5, 2007, Hartford sent a letter to another one of Toppins' treating physicians, Dr. Dickinson, also seeking information regarding Toppins' "functional capacity to perform at light to sedentary capacity." In the letter to Dr. Dickinson, Hartford attached Dr. Swink's response to its November 2006 letter but did not attach the forms submitted by Dr. Swink in March 2006. Dr. Dickinson returned the letter, marking certain lines in which he agreed that Toppins "is capable of performing work at the sedentary capacity level" and in which he agreed that Toppins "is capable of performing work at the light capacity level." (EA at B106-07). Hartford subsequently concluded that Toppins was no longer disabled under the "Any Occupation" provision of the policy and terminated her benefits on March 7, 2007.

On March 23, 2007, Toppins sent a letter appealing Hartford's termination of her disability benefits. After Toppins' appeal, Dr. Dickinson sent a letter to Hartford dated April 3, 2007, stating that he had only been treating Toppins since June 2006 and had limited access to her past medical history. Dr. Dickinson further explained that "Toppins has multiple medical conditions that would limit the amount of time and type of job" and that due to her medications "sedation" would limit her ability to focus on work. (EA at B28). In addition, pain would cause her to be restless and have to move "very frequently." *Id.*

Hartford then obtained a independent records review of Toppins' claim from Dr. Gary Nudell, a physician board certified in internal medicine. Dr. Nudell reviewed Toppins' medical records and contacted Dr. Dickinson, ultimately concluding that Toppins was "capable of functioning in a light duty occupation, with the caveat that she should be able to move positions every hour if needed." (EA at B16). Relying on the conclusions in Dr. Nudell's report, Hartford

3

sent a letter to Toppins on May 16, 2007, denying her appeal. However, Hartford did not provide Toppins with an opportunity to review or respond to Dr. Nudell's report before it issued its final denial on appeal.

## II. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

## III. Discussion

### A. ERISA Standard of Review

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). The Court generally reviews de novo a denial of benefits governed by ERISA. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where the plan gives the administrator discretionary authority to grant or deny benefits, as it does in this case, the Court reviews the administrator's determination for an abuse of discretion. *Id.*

4

Toppins argues that Hartford's decision to terminate her benefits should be reviewed under "a standard less deferential than the abuse of discretion standard" because of Hartford's conflict of interest as both the administrator of claims and payor of benefits and because of alleged "procedural irregularities." Hartford argues, and this Court agrees, that Toppins misreads the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008). In *MetLife*, the Supreme Court held that, even where a plan grants discretionary authority to the administrator, a conflict of interest exists where an employer or an insurer both administers a plan and determines eligibility of plan participants. 128 S. Ct. at 2349-50. However, the Supreme Court explained that the conflict of interest does not "change the standard of review, say, from deferential to de novo review." Rather, the conflict of interest is a "factor in determining whether there is an abuse of discretion." *Id.* at 2350; *see also Hackett v. Standard Ins. Co.*, 559 F.3d 825 (8th Cir. 2009). Here, Hartford both administers and determines eligibility of plan participants. Thus, the standard of review remains abuse of discretion, yet Hartford's conflict of interest must be balanced with other case-specific factors to determine if there was an abuse of discretion. Those case-specific factors, as explained below, demonstrate that Hartford abused its discretion.

**B.     Hartford's Decision to Terminate Benefits**

An employee benefit plan governed by ERISA must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Full and fair review includes the right to review all documents, records, and other information relevant to the

5

claimant's claim for benefits, as well as the right to an appeal that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h). ERISA and its regulations call for a "meaningful dialogue between the plan administrators and their beneficiaries." *Abram v. Cargill, Inc.*, 395 F.3d 882 (8th Cir. 2005) (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). The Eighth Circuit has further explained that such procedures allow a claimant to "adequately prepare [her]self for any further administrative review, as well as an appeal to the federal courts. The statute and regulations were intended to help claimants process their claims efficiently and fairly." *Id.* (quoting *Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981)).

In *Abram*, the Eighth Circuit held that a claimant should be permitted an opportunity to review and respond to a physician's report before a plan makes a final decision. *Id.* at 886. In *Abram*, Plaintiff applied for disability, submitted medical records to her plan's administrator, and was sent to an independent medical examiner. *Id.* at 885. Plaintiff's claim was denied, and she appealed submitting her own functional capacity evaluation. *Id.* The plan's appeals committee sent this evaluation to an independent medical examiner for review, and then denied Plaintiff's claim based on this review. Plaintiff was only provided a copy of the report of the independent medical examiner's records review in her final denial letter. *Id.*

As the court in *Abram* explained, "[t]here can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision. A claimant is caught off guard when new information used by the appeals committee emerges only

6

with the final denial." *Id.* at 886.

In this case, Toppins contends that, according to *Abram* and for a "full and fair review" of her claim, she should have been provided with the opportunity to review and respond to Dr. Nudell's report, which was the basis for Hartford's denial of her benefits. Hartford responds that Toppins' argument is based upon "old law" and that it was not required to disclose Dr. Nudell's report until after the final decision on Toppins' appeal.

While Toppins' claim is based upon "old law," it is still applicable law to her claim. In 2000, the Department of Labor amended the "minimum procedural requirements for benefit claims under employee benefit plans." 65 Fed-Reg. 70,246, 70-246 (Nov. 21, 2000). The amended regulations also specified the dates upon which they became applicable:

> (1) Except as provided in paragraph (o)(2) of this section, this section shall apply to claims filed under a plan on or after January 1, 2002. (2) This section shall apply to claims filed under a group health plan on or after the first day of the first plan year beginning on or after July 1, 2002, but in no event later than January 1, 2003.

29 C.F.R. § 2560.503-1(o). The parties do not dispute that Toppins applied for benefits in June 2000 and that Hartford approved her application and started paying her benefits from August 6, 2000. There is no argument made by either party, and no case law, indicating that Toppins' claim should be considered as occurring on a date after the effective date of the regulations. Thus, the amended regulations are not applicable to her claim.

Hartford next argues, even if *Abram* applies, the Eighth Circuit would no longer follow it based on its decision in *Midgett v . Washington Group International Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009). In *Midgett*, the plaintiff argued she was entitled to the

7

opportunity to review and respond to an independent medical examiner's report as well as peer reviews under the holding in *Abram*. 561 F.3d at 894. The plaintiff in *Midgett* filed her claim in 2006. *Id.* at 890. In denying her the right to review and rebut the reports for a full and fair review of her claim, the Eighth Circuit explained that her case presented "one of those exceptional circumstances where a change in the law renders a prior decision non-binding." *Id.* at 894 (quoting *Buchholz v. Aldaya*, 210 F.3d 862, 866 (8th Cir. 2000)). Because the amended regulations were effective no later than January 1, 2003, they were applicable to her claim, unlike the plaintiff in *Abram*. *Id.* at 890.

In *Midgett*, the Eighth Circuit recognized that another court questioned the reasoning of *Abram*. The Eighth Circuit acknowledged that the Tenth Circuit disagreed with its opinion in *Abram* because the ability "to review and rebut medical opinions on administrative appeal 'would set up an unnecessary cycle of submission, review, re-submission, and re-review.'" *Id.* at 895 (quoting *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166 (10th Cir. 2007)). However, the Eighth Circuit in *Midgett* indicated that the Tenth Circuit's reasoning was not relevant to claims occurring prior to the new regulations: "[a]s noted by the Tenth Circuit, because the amendments to § 2560.503-1 did not apply to the claim in *Abram*, we 'did not consider the potential for circularity of review' in that case." *Id.* (quoting *Metzger*, 476 F.3d at 1167 n.3).

In *Midgett*, the Eighth Circuit did not state that it overturned *Abram*, but emphasized that the plaintiff's claim was based upon the new Department of Labor standards, which were "inapplicable to the claim in *Abram*." *Id.* at 496. Thus, without further direction from the Eighth

8

Circuit, this Court must follow the precedent established in *Abram* because Toppins' claim was filed before the new Department of Labor standards were applicable. Therefore, the plan administrator's denial of Toppins' benefits was an abuse of discretion because it did not provide Toppins with the opportunity to review and respond to Dr. Nudell's report.

On remand to the plan administrator, this Court agrees with the rationale of the court in *Lammers v. American Express Long Term Disability Benefit Plan*, No. 06-1099, 2007 WL 2247594, at *2 (D. Minn. Aug. 2, 2007):

> The Court does not understand *Abram* to require that [plaintiff] be given an opportunity to submit new medical evidence in response to the new reports. If claimants had such a right, the result would be an endless cycle in which each new medical opinion solicited by the plan administrator would be met by new medical evidence submitted by the claimant that would have to be the subject of yet another medical opinion solicited by the plan administrator that would then be met by yet more medical evidence submitted by the claimant. The plan administrator must be able to close the evidentiary record at some point.

Thus, although Toppins must be given the opportunity to respond to what Dr. Nudell said in his report about the medical evidence already in the administrative record, *Abram* does not give Toppins the right to respond with new medical evidence.

### C. Additional Remedies Sought

In her motion for summary judgment, Toppins also seeks 1) a reversal of Hartford's decision to terminate her disability benefits; 2) an order that Hartford pay Toppins her past due benefits plus interest; 3) a finding that Toppins' disability continues through the date of the Court's decision, and 4) an order for reasonable attorneys' fees. Because Hartford denied Toppins the full and fair review of her appeal, the Court does not need to reach Toppins' claim

9

that Hartford's denial was unsupported by substantial evidence.[1] However, the Court is willing to entertain a motion for attorneys' fees at this time based on its summary judgment decision herein. *See* 29 U.S.C. § 1132(g)(1); *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 971-72 (8th Cir. 2002).

**IV.   Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiff Mary B. Toppins' Motion for Summary Judgment [Doc. # 23] is GRANTED IN PART. This case is REMANDED to Defendant the Hartford Life and Accident Insurance Company. On remand, Hartford shall reopen the administrative proceedings to permit Toppins to respond to Hartford's physician's report prepared in response to Toppins' appeal of the denial of long term disability benefits. Toppins' motion is DENIED in all other respects, without prejudice to Toppins' ability to renew her remaining arguments at a later time.

---

[1] Although Toppins argues that Hartford should have considered in its determination her previous hospitalization in 2007 for ischemic colitis and receipt of social security disability benefits beginning in 2001, she provides no support for these arguments. When asked to provide additional medical documentation to support her disability claim, Toppins did not submit any medical records to Hartford regarding her 2007 hospitalization. Furthermore, while both Hartford and the Social Security Administration previously determined that Toppins was disabled under their respective plan and regulatory schemes. Toppins provides no support, in the record or otherwise, that Hartford cannot periodically review its determination or that the Social Security Administration had subsequently reviewed her disability claim after its initial determination in 2001.

It is further

ORDERED that Defendant the Hartford Life and Accident Insurance Company's Motion for Summary Judgment [Doc. # 21] is DENIED.

                                                        s/ Nanette K. Laughrey
                                                        NANETTE K. LAUGHREY
                                                        United States District Judge

Dated: September 24, 2009
Jefferson City, Missouri